This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41147**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JUAN CLAUDIO GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clara Moran, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** This matter was submitted to this Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}**     Defendant appeals the district court's determination that he committed attempted first-degree murder, which resulted in his confinement in the New Mexico Behavioral Health Institute, pursuant to the New Mexico Mental Illness and Competency Code. *See* NMSA 1978, §§ 31-9-1 to -1.5 (1988, as amended through 1993). Specifically, he argues that the State failed to present sufficient evidence at the Section 31-9-1.5 hearing to support the district court's decision that he killed Victim with the deliberate intent to take her life. [BIC 1] In reviewing the sufficiency of the evidence to support Defendant's commitment for attempted first-degree murder, we must not substitute our judgment for that of the district court. *See State v. Adonis*, 2008-NMSC-059, ¶ 14, 145 N.M. 102, 194 P.3d 717. "While we exercise restraint in conducting this review, we must nevertheless subject the evidence presented at the hearing to careful scrutiny to ensure that any rational fact finder could have found the essential facts required to order [the d]efendant's commitment for first-degree murder." *Id.* ¶ 12 (emphasis, omission, internal quotation marks, and citation omitted). For Section 1.5 hearings, the burden of proof the State must meet is clear and convincing evidence of the crime. *See* § 31-9-1.5(D) (requiring a showing of clear and convincing evidence where a defendant, who has been declared incompetent and unable to stand trial, committed one of the enumerated felonies set forth in the statute before they may be detained). "Clear and convincing evidence is evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Adonis*, 2008-NMSC-059, ¶ 11 (alteration, internal quotation marks, and citation omitted).

**{3}**     "To prove first-degree murder, the [s]tate has a heightened burden commensurate with the severity of punishment reserved for that crime. Thus, the [s]tate must prove that the killing was willful, deliberate and premeditated." *Id.* ¶ 14 (internal quotation marks and citation omitted); *see* NMSA 1978, § 30-2-1(A)(1) (1994). A willful, deliberate, and premeditated killing is a killing with "the deliberate intention to take away the life of another." *State v. Garcia*, 1992-NMSC-048, ¶ 17, 114 N.M. 269, 837 P.2d 862 (internal quotation marks and citation omitted). "Deliberate intent may be inferred from the particular circumstances of the killing as proved by the State through the presentation of physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 8, 140 N.M. 94, 140 P.3d 515.

**{4}**     In the present case, Defendant was charged with attempted first-degree murder, among other charges, after he attacked the manager of a hotel. [RP 1] Based on the footage from the hotel security camera, after entering the lobby of the hotel, Defendant began a conversation with Victim, who was the clerk behind the counter, and asked for a room. [BIC 1; AB 2] After he was refused a room, Defendant gathered up his belongings and left. [BIC 1; AB 2] Approximately two to three minutes later, Defendant returned to the lobby, approached Victim, and punched her in the head repeatedly. [BIC 1; AB 3] He then threw her to the ground and began to kick her multiple times until she was incapacitated. [AB 3] Defendant then went behind the counter and returned to the lobby carrying scissors; he walked back toward Victim and stabbed her four times in the throat. [BIC 1; AB 3-4] Defendant then left, locking the lobby door behind him. [AB 3]

**{5}** After he was arrested later that same day, Defendant told police officers that he had wanted a room to get warm but that Victim "was being unreasonable, cruel" and "hateful." [BIC 2; AB 4] He stated that Victim did not care how he lived and that she wanted him "to lay out in the cold and suffer." [BIC 2; AB 4] In response to the officer's question about what happened after he punched Victim, Defendant stated, "I stabbed [Victim] in the neck with a knife. I was trying to kill her. [Victim] didn't care if I died so I wanted her to die. I thought I was going to get a room if I killed [Victim]." [BIC 3; AB 5]

**{6}** In its order, the district court held that Defendant "acted in a manner that indicates that he had deliberated about killing [Victim], and that his mental state was not simply rash and impulsive, but willful and premeditated." [RP 165] The district court based this decision on Defendant's own statements and the footage from the security camera. [RP 165] Specifically, the district court considered that there was a verbal exchange between Victim and Defendant; Defendant left the hotel lobby for approximately two minutes before returning to attack Victim; and his statements indicated that the manner in which Victim treated him caused him to return. [RP 166] The district court also considered the manner in which Defendant carried out his attack. Ultimately, the district court found that there was clear and convincing evidence that Defendant acted in a willful and deliberate manner. [RP 167]

**{7}** Defendant argues, however, that the State "did not present sufficient evidence of deliberation—of the careful weighing involved in willful and deliberate murder." [BIC 8] Rather, he maintains that the evidence "show[s] a confused mind and [is] much more indicative of rash and impulsive behavior than deliberation," which supports no more than attempted second-degree murder. [BIC 1, 8] *See Adonis*, 2008-NMSC-059, ¶ 16 (explaining that second-degree murder "may be intentional, [if] it is committed without the deliberation and premeditation required for first-degree murder" and requires that the state "merely prove[] that the accused acted rashly or impulsively, rather than deliberately").

**{8}** Defendant relies on three cases in support of his proposition that the State presented insufficient evidence. [BIC 9-13, 15-16] First, in *State v. Garcia*, 1992-NMSC-048, ¶ 7, 114 N.M. 269, 837 P.2d 862, after an on-again, off-again argument with a friend, the defendant stabbed his friend to death. After a trial, the jury found the defendant guilty of first-degree murder. *Id.* ¶ 13. On appeal, however, our Supreme Court reversed, and explained that "[t]here was no evidence to support the jury's conclusion that, as contemplated by the trial court's instruction, [the defendant] decided to stab [the victim] as a result of careful thought." *Id.* ¶ 28. Rather, the Court stated that the only evidence, either direct or circumstantial, as to the defendant's state of mind, was that he had argued multiple times with the victim. The Court determined that the evidence was "consistent with a rash and impulsive killing" and that there was no evidence that the defendant formed the deliberate intention to kill. *Id.*

**{9}** Second, in *State v. Taylor*, 2000-NMCA-072, ¶ 5, 129 N.M. 376, 8 P.3d 863, the defendant shot his wife after she struck their child a third time. *Id.* The defendant later admitted that he shot her because he believed that she was possessed by the devil. *Id.*

After the Section 1.5 hearing, the district court determined that the state had presented clear and convincing evidence that the defendant had committed first-degree murder. *Id.* ¶ 7. This Court stated that the state's case was "skeletal" and that "the events surrounding the shooting are vague." *Id.* ¶ 20. This Court explained that the strongest evidence as to the defendant's state of mind was his "admission to the police that he armed himself with a hand gun and shot [his wife] after she hit their daughter the third time." *Id.* ¶ 22. However, this Court noted that "[a]lthough the retrieval of weapon could have given [the d]efendant the opportunity to deliberate about killing [his wife], there is no evidence from which we can permissibly infer that [the d]efendant actually did so." *Id.* In addition, this Court stated that "[the d]efendant's rote recitation of what happened, even his admission that he killed his wife, provided no details of reflection or contemplation before the killing, as required of first degree murder convictions." *Id.* Ultimately, this Court held that the evidence did not rise to the level of deliberate first-degree murder because it called for speculation as to whether the defendant had actually deliberated about killing his wife when he went to retrieve his gun. *Id.* ¶ 23.

**{10}** Finally, in *Adonis*, 2008-NMSC-059, ¶ 4, the defendant shot a man who had parked in his residential parking space. The defendant admitted to the killing, and stated "that will teach this guy a lesson not to park in my place no more." *Id.* ¶ 30 (Chávez, C.J., dissenting). Our Supreme Court determined that there was no evidence to suggest that the defendant had a plan to kill the next person who parked in his parking space because no one had heard the defendant complain about anyone parking in his space or that he had made any threats to hurt anyone who parked in his space. *Id.* ¶ 21. Although he had retrieved a gun before killing the victim, the Court held that the evidence failed to support that the defendant deliberated or formulated a plan prior to the shooting. *Id.* ¶ 22. The Court also held that the defendant's statement to police officers after the shooting was insufficient, on its own, to prove deliberate intent. *Id.* ¶ 25.

**{11}** Based on the evidence presented, we believe the facts of this case are distinguishable from *Garcia*, *Taylor*, and *Adonis*. Unlike *Garcia*, *Taylor*, and *Adonis*, we agree with the State that there was sufficient evidence that Defendant acted with deliberate intent and the district court did not have to speculate about Defendant's intent. *See Taylor*, 2000-NMCA-072, ¶ 23. Defendant argues that his conduct constituted "a rash impulse," contending the entire incident took place in fifty seconds and there was "no evidence of him thinking or planning during this time." [BIC 11] However, the evidence by way of security video shows that Defendant left the hotel lobby for approximately two to three minutes before returning and attacking Victim; and after he incapacitated Victim, he went behind the counter and returned with scissors whereupon he continued the attack by stabbing her in the throat. This evidence demonstrates that Defendant had time to contemplate and reflect before the attack began and after he had incapacitated her, even if only briefly. *See Garcia*, 1992-NMSC-048, ¶ 28; *Taylor*, 2000-NMCA-072, ¶ 22; *Adonis*, 2008-NMSC-059, ¶ 22; *see also* UJI 14-201 NMRA ("A calculated judgment and decision may be arrived at in a short period of time.").

**{12}** In addition, although Defendant maintains that the statements he made after the attack "are not sufficient to prove [he] carefully deliberated" [BIC 11], we disagree. When police officers questioned him about the incident, Defendant stated that Victim "was being unreasonable, cruel" and "hateful"; Victim did not care how he lived, and that she wanted him "to lay out in the cold and suffer"; and that "I stabbed [Victim] in the neck with a knife. I was trying to kill her. [Victim] didn't care if I died so I wanted her to die. I thought I was going to get a room if I killed her." [BIC 2-3; AB 5] Based on these statements, we believe that a rational fact-finder could have found the essential facts required to order Defendant's commitment for attempted first-degree murder. *See Adonis*, 2008-NMSC-059, ¶ 12. The statements appear to provide the reason behind the attack—that is, Victim treated Defendant badly, he believed that she wanted him to suffer, and if she died, then he would get a room. Based on this evidence, the district court could make the inference that Defendant had a deliberate intent to kill Victim when he returned to the lobby in order to exact vengeance on Victim for the way Victim had treated him. *See State v. Baca*, 2019-NMSC-014, ¶¶ 22-23, 448 P.3d 576 (concluding that a trier of fact could find the statements made by the defendant regarding the attack on the victim and the injuries the victim received credible and make an inference of deliberative intent); *see also State v. Smith*, 1966-NMSC-128, ¶ 13, 76 N.M. 477, 416 P.2d 146 (stating that a jury may consider the animus of the accused toward the deceased in determining deliberate intent). Although Defendant argues that he made exculpatory statements, the district court was free to reject any evidence that supported a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Accordingly, based on Defendant's statements, coupled with the evidence from the security video, we conclude that the State presented sufficient evidence to support the district court's order finding that Defendant's conduct was willful and deliberate and that he committed attempted first-degree murder.

**{13}** For the foregoing reasons, we affirm the district court's determination that Defendant committed attempted first-degree murder.

**{14}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**